

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00354-CV

---

TARRANT REGIONAL WATER
DISTRICT

APPELLANT

V.

MONTY BENNETT

APPELLEE

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-264899-13

----------

## OPINION

----------

## I. INTRODUCTION

Appellee Monty Bennett sued Appellant Tarrant Regional Water District (TRWD) for alleged violations of the Texas Open Meetings Act (TOMA). *See* Tex. Gov't Code Ann. §§ 551.001–.146 (West 2012 & Supp. 2014). TRWD filed a plea to the jurisdiction, arguing that its immunity from Bennett's suit remained intact because the Texas Water Code expressly excepts the conduct of which

Bennett complains from TOMA's coverage.  *See* Tex. Water Code Ann. § 49.064 (West 2008).  The trial court disagreed with TRWD and denied its plea.  We disagree with the trial court and will reverse and render a judgment of dismissal.

## II. BACKGROUND

Bennett is a resident of Dallas County and a principal of East Texas Ranch, LP, an entity that owns and operates a "wildlife sanctuary" in Henderson County.

TRWD is a water control and improvement district created under the authority of article XVI, section 59 of the Texas constitution and governed by chapters 49 and 51 of the water code.  *See* Tex. Const. art. XVI, § 59; Tex. Water Code Ann. §§ 49.001–.512 (West 2008 & Supp. 2014), §§ 51.001–.875 (West 2002 & Supp. 2014).  TRWD is administratively governed by a Board of Directors (the Board).  *See* Tex. Water Code Ann. § 51.071.  One of TRWD's purposes is "the control, storage, preservation, and distribution of its water and floodwater and the water of its rivers and streams for irrigation, power, and all other useful purposes."  *See id.* § 51.121(b)(1).

Bennett alleged in his original and amended petitions that TRWD and its Board have continuously and systematically violated TOMA by conducting TRWD's "affairs in a manner that ensures [that] substantive discussion, deliberation and informed decision-making about TRWD's public business and policy all occur away from the public view and outside of meetings open to the public."  Specifically, Bennett acknowledged that TRWD's Board conducts open

2

meetings, but the meetings, he contended, are merely "designed to elevate form over substance and maintain the illusion of compliance with" TOMA. He claims that discussion, deliberation, and decision-making of TRWD business actually occur before the Board's meetings and outside of the public view by authorized committees. According to Bennett, the committees, which he believes are governmental bodies subject to TOMA, function in more than just an advisory role to the Board; they exercise supervision and control of TRWD's public business, making formal decisions on matters that are then presented to the Board in the form of "recommendations." The Board then rubber-stamps—ceremoniously, unanimously, and without any meaningful deliberation—the committees' decisions.

As an example, Bennett referenced an agreement between TRWD and the City of Dallas for the construction of a water pipeline from Lake Palestine to Benbrook Lake. The project, a multi-billion dollar joint venture, apparently calls for approximately 140 miles of pipeline, a number of connections, and the construction and use of high voltage power lines and pump stations. Bennett averred that the decision to contract with the City of Dallas was made by TRWD's Construction and Operations Committee, which Bennett has named the "Action Committee," and that TRWD's Board predictably approved the decision with a rubber-stamp vote.

Bennett complains of three TRWD committees that he insists are governmental bodies subject to TOMA: (1) the "Action Committee," which

3

supervises and controls TRWD's public business; (2) the "Legal Action Department," which TRWD's Board vested with authority to pursue judicial relief in furtherance of the pipeline project; and (3) the "Pipeline Management Committee," which TRWD tasked with overseeing and implementing the pipeline project.

Bennett seeks declarations that TRWD, its Board, and its committees are subject to TOMA; that each governmental body has violated TOMA; and that all actions taken in violation of TOMA are void. He also seeks injunctive relief, including a permanent injunction requiring TRWD to comply with TOMA and prohibiting TRWD from "taking any action in furtherance of the Pipeline Project until all TOMA violations have been remedied."

TRWD countered in its plea to the jurisdiction that Bennett's "real complaint" lies with the pipeline project "because a small section of the pipeline could pass under a portion of [Bennett's] rural property in Henderson County." According to TRWD,

> [Bennett] filed this litigation in coordination with his substantial financial support of three candidates challenging incumbent members of TRWD's Board seeking reelection in May 2013. The three candidates frequently mentioned [Bennett's] lawsuit in their campaign literature disseminated before the election. These efforts to secure a majority of the Board failed and [Bennett] is pursuing this meritless case as part of an apparent strategy to modify or to shut down the pipeline project.

Regarding the three committees that Bennett claims are governmental bodies subject to TOMA, TRWD clarified that the Construction & Operations

4

Committee is a committee of the Board but that no more than two members of the Board had been present at any of its meetings from January 2009 through June 2013; that there is no "Legal Action Department"—the Board had simply adopted a resolution, in connection with the Integrated Pipeline Project, authorizing TRWD's Real Property Director to enforce TRWD's rights under water code section 49.221, if necessary; and that there is no "Pipeline Management Committee"—insofar as Bennett refers to engineers, contractors, and staff members who meet to work on the Integrated Pipeline Project, the meetings occur in the ordinary course of employment at TRWD and without the attendance of any TRWD board members.

TRWD argued that Bennett's suit should be dismissed for lack of jurisdiction because he relies upon TOMA to waive TRWD's immunity from suit, but TOMA does not apply to meetings of board committees when less than a quorum is present—the very committee meetings of which Bennett complains. TRWD additionally argued that its plea should be granted because Bennett failed to join indispensable parties and because his claims are moot. The trial court denied TRWD's plea, and this interlocutory appeal followed.

### III. TRWD'S GOVERNMENTAL IMMUNITY

TRWD argues in its first issue that its immunity from Bennett's suit has not been waived because the committee meetings of which he complains are unambiguously exempted from TOMA's coverage by the water code. We agree.

5

## A. Standard of Review

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). If the evidence creates a fact issue, then it is for the factfinder to decide. *Id.* In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Water control and improvement districts are "valid and existing governmental agencies and bodies politic." *Kirby Lake Dev., Ltd. v. Clear Lake Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010). As such, they enjoy governmental immunity from suit, unless immunity is expressly waived. *Id.*

### B. No TOMA Coverage, No Waiver of Immunity

Bennett relies on TOMA to waive TRWD's immunity from suit. TOMA's purpose is to enable public access to, and to increase public knowledge of, government decision making. *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991). It "was promulgated to encourage good government by ending, to the extent possible, closed-door sessions in which deals are cut without public scrutiny." *Save Our Springs Alliance, Inc. v. Lowry*, 934 S.W.2d 161, 162 (Tex. App.—Austin 1996, orig. proceeding). To that end, with certain exceptions, TOMA requires that every regular, special, or called meeting of a "governmental body" be open to the public. *See* Tex. Gov't Code Ann. § 551.002. Several courts have held that TOMA expressly waives immunity for violations of the act and authorizes suits against governmental bodies. *See Riley v. Comm'rs Court of Blanco Cnty.*, 413 S.W.3d 774, 776 (Tex. App.—Austin 2013, pet. denied); *Gillium v. Santa Fe ISD*, No. 01-10-00351-CV, 2011 WL 1938476, at *7 (Tex. App.—Houston [1st Dist.] May 12, 2011, no pet.) (mem. op.).

TRWD does not dispute that TOMA waives governmental immunity or that the meetings of its Board are subject to TOMA. Rather, directing us to water code section 49.064, TRWD argues that TOMA's waiver of immunity simply does not apply here because its coverage does not extend to the Board's committee meetings in which less than a quorum of the Board is present, and Bennett's suit implicates only those types of committee meetings. Bennett responds that the

7

legislature "did not create the illogical 'exemption' proposed by" TRWD. We apply well-established rules of statutory construction to resolve the issue.

Our primary objective when construing a statute is to ascertain and give effect to the legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We seek that intent first and foremost in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011(a) (West 2013). Further, in determining the meaning of a statue, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991). We presume that the entire statute is intended to be effective and that the legislature enacted it with complete knowledge of the existing law and with reference to it. Tex. Gov't Code Ann. § 311.021(2) (West 2013); *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). We do not lightly presume that the legislature may have done a useless act. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010).

Water code chapter 49 provides a blueprint for creating and operating general law water districts. *Kirby Lake Dev.*, 320 S.W.3d at 835. Section 49.051 provides that a district "shall be governed by its board," and section 49.053 states

8

that "[a] majority of the membership of the board constitutes a quorum for any meeting." Tex. Water Code Ann. §§ 49.051, .053. Because a water control and improvement district's board "shall consist of five directors," *see id.* § 51.071, three members constitutes a quorum; anything less does not. Titled "Meetings," section 49.064 provides as follows:

> The board shall hold such regular and special meetings as may be necessary for the proper conduct of the district's business. All meetings shall be conducted in accordance with the open meetings law, Chapter 551, Government Code. *A meeting of a committee of the board*, or a committee composed of representatives of more than one board, *where less than a quorum of any one board is present is not subject to the provisions of the open meetings law*, Chapter 551, Government Code.

*Id.* § 49.064 (emphasis added).

The legislature could not have been more clear. While a board's meetings must be conducted in accordance with TOMA, meetings of the board's committees in which less than a quorum of the board is present are not subject to TOMA's open-meetings requirements. As applied to TRWD, which is subject to chapter 49, section 49.064 requires the Board to conduct its meetings in accordance with TOMA but does not require meetings of the Board's committees at which less than a quorum of the Board is present to comply with TOMA's requirements.

This plain-meaning interpretation is consistent not only with other provisions of chapter 49 but also with TOMA. *See* Tex. Gov't Code Ann. § 311.011(a) (providing that words and phrases shall be read in context); *Sharp*,

9

815 S.W.2d at 249. Water code section 49.063 provides that notice of board meetings "shall be given as set forth in the open meetings law"; the statute does not afford a similar notice requirement to meetings of a board's committee. And although a "committee" is included in the definition of "governmental body," as Bennett points out, TOMA defines a "Meeting" as "a deliberation between *a quorum* of a governmental body" or a deliberation "between *a quorum* of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." Tex. Gov't Code Ann. § 551.001(3)(A), (4)(A) (emphasis added). Thus, the legislature's decision in water code section 49.064 to except from TOMA's requirements meetings of a board's committee in which *less than a quorum* of the board is present comports with its decision in TOMA to define a "Meeting" as constituting a deliberation involving, at minimum, *a quorum* of a "governmental body." Our presumption that the legislature enacted the later-in-time water code provision with complete knowledge of the earlier-enacted TOMA is therefore particularly relevant here. *Compare* Act of May 25, 1995, 74th Leg., R.S., ch. 715, § 2, 1995 Tex. Gen. Laws 3755, 3760, *with* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 586.

Bennett argues that interpreting water code section 49.064 as TRWD suggests would lead to an absurd result—concluding on one hand that the legislature requires that water districts be governed by boards that must manage

10

district affairs and conduct meetings in the open but concluding on the other hand that the legislature, in the same statute, "enacted an exception that nullified that mandate by permitting water districts to intentionally act privately and non-publicly through committees."[1]  Interpreted according to its plain language and in context, section 49.064 does not permit water districts to "intentionally act privately and non-publicly through committees" or to "operate and conduct a district's affairs privately."  Bennett's charges are merely a reflection of his own allegations in this lawsuit, not the unambiguous language of the statute.  Our proper construction of the water code does not somehow conclusively establish Bennett's allegations for him.[2]

In arguing that water code section 49.064 should not be interpreted to exclude from TOMA's coverage meetings of the Board's committees in which less than a quorum of the Board is present, Bennett directs us to a handful of attorney general opinions, the gist of which reason that TOMA's requirements "may" apply to meetings of less than a quorum of a governmental body even though TOMA expressly defines a "Meeting" as a deliberation involving a quorum

---

[1]In a related argument, Bennett contends that water code section 49.064 does not "say that a water district's board 'may act through committees' as [TRWD] has asserted.  Nor does it say a district may do so to exempt itself from TOMA's requirements, and operate and conduct a district's affairs privately."

[2]TRWD also makes a good point:  Its "use of committee action in researching, planning and implementing the Integrated Pipeline Project is the antithesis of absurdity.  Indeed, it would be illogical to think that the complex engineering studies, project specifications, logistical analyses, and contract development could be efficiently and effectively accomplished at the board level."

11

of a governmental body. *See* Tex. Att'y Gen. Op. No. JC-0060 (1999); Tex. Att'y Gen. Op. No. JC-0053 (1999); Tex. Att'y Gen. LO-97-058 (1997); Tex. Att'y Gen. LO-97-017 (1997); Tex. Att'y Gen. LO-76-H-823 (1976); Tex. Att'y Gen. LO-74-H-438 (1974). Citing only themselves as authority, the opinions' reasoning appears to hinge on a distinction between a committee that possesses purely advisory duties and a committee that has the power to supervise or control public business or policy. *See* Tex. Att'y Gen. Op. No. JC-0053; Tex. Att'y Gen. LO-97-017. Bennett runs with the analysis in his pleadings and on appeal, contending that TRWD "operates through committees that were more than advisory committees, which had responsibility and authority to supervise and control, and did supervise and control, important public business and policy for the district."

Under the circumstances, we are not persuaded by any of the inapposite attorney general opinions. *See Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996) (stating that attorney general opinions are not controlling on the courts). None of the opinions involve either water code section 49.064 or another statute like section 49.064 that expressly disclaims TOMA's coverage. Moreover, several of the opinions purport to conclude that a committee appointed by a governmental body but containing less than a quorum of its members may be subject to TOMA because the committee "falls within a definition of the term 'governmental body.'" Tex. Atty. Gen. Op. No. JC-0060. But such a construction effectively renders meaningless part of another of TOMA's equally important definitions: "Meeting," which requires a quorum of a governmental body.

12

Ultimately, the construction advocated by the opinions fails to abide by the supreme court's demand that there be "exact and literal compliance with the terms of" TOMA. *See Acker*, 790 S.W.2d at 300.

Citing the need to liberally construe TOMA's provisions to safeguard the public's interest, the San Antonio court of appeals once employed reasoning similar to the attorney general's opinions. *See Willmann v. City of San Antonio*, 123 S.W.3d 469, 478 (Tex. App.—San Antonio 2003, pet. denied). However, liberally construing TOMA does not mean shelving well-established rules of statutory construction to achieve a particular result that is patently inconsistent with the literal terms of the statute.

Turning to TRWD's jurisdictional evidence, it included the affidavits of Alan Thomas, TRWD's Assistant General Manager, and Nancy King, TRWD's Records Manager. Thomas confirmed that "[a]t no time during the past four years has a meeting of the Construction & Operations Committee been attended by more than two members of the Board," i.e., three members being a quorum of the Board. King attached to her affidavit reports from January 2009 through June 2013 confirming Thomas's statement. Bennett did not controvert this evidence, nor are his arguments challenging the evidence persuasive.

Bennett complains about the "Pipeline Management Committee," but according to Thomas, there is no such committee. To the extent that Bennett refers to TRWD engineers, contractors, and staff members who meet to work on the Integrated Pipeline Project, Thomas affirmed that the meetings occur in the

13

ordinary course of employment at TRWD and without the attendance of any TRWD board members. Because TOMA addresses violations by members of a governmental body, *see* Tex. Gov't Code Ann. § 551.142(a), Bennett's allegations against TRWD staff do not allege a violation of TOMA—and therefore a waiver of governmental immunity—independent of his allegations against the Construction & Operations Committee, what Bennett calls the "Action Committee."[3] *See id.* § 554.001 (not including staff in definition of "Governmental body").

In sum, Bennett complains that TRWD's Board violated TOMA by privately conducting its affairs through authorized committees that exercise supervision and control of public business, but water code section 49.064 unambiguously excludes from TOMA's coverage meetings of the Board's committees at which less than a quorum is present, and TRWD's jurisdictional evidence conclusively established that less than a quorum of TRWD's Board had attended any of the claimed committee meetings of which Bennett complains. TOMA and its accompanying waiver of immunity therefore do not apply, and the trial court erred by denying TRWD's plea to the jurisdiction. We sustain TRWD's first issue and do not reach its second and third issues. *See* Tex. R. App. P. 47.1.

---

[3]Bennett's allegations against what he calls TRWD's "Legal Action Department" suffer similarly.

14

## IV. Conclusion

Having sustained TRWD's first issue, we reverse the trial court's order denying TRWD's plea to the jurisdiction and render judgment dismissing Bennett's claims against TRWD for lack of jurisdiction.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DAUPHINOT, J., filed a dissenting opinion.

DELIVERED: November 26, 2014