# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00724-CV

**Lower Colorado River Authority, Appellant**

**v.**

**Burnet Central Appraisal District, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 424TH JUDICIAL DISTRICT
### NO. 43,313, HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

## O P I N I O N

The Lower Colorado River Authority (LCRA) sought review in the trial court of a final order of the Burnet Central Appraisal District (BCAD) determining that LCRA's Sunset Point RV Park (the Park) was not exempt from ad valorem taxes. The trial court granted BCAD's motion for summary judgment, and LCRA filed this appeal. Because we conclude that the park is owned and held only for public purposes and is therefore tax exempt, we will reverse the trial court's summary judgment.

## BACKGROUND

The relevant facts are undisputed. LCRA is a governmental entity whose purposes include, among others, "the control, storing, preservation, and distribution of the waters of the Colorado River" and "the development of parks on lands owned or acquired by the authority." *See* Tex. Spec. Dist. Code § 8503.001; *id.* § 8503.004(s) ("The authority may develop and manage

parks, recreational facilities, and natural science laboratories and may promote the preservation of fish and wildlife within the boundaries of the authority."). The Park, which consists of approximately 63 acres on Lake LBJ, is owned by LCRA and leased to a private for-profit limited partnership (the Lessee). Under the terms of the lease, the Park is "to be used for the development and operation of a public commercial recreation facility and public park." The Park includes such amenities as RV connections, a public boat ramp, a swimming area, picnic areas, and a park store. The Lessee manages the Park and collects entrance and use fees. In addition, part of the Park is taken up by the structures of LCRA's Wirtz Dam, and part of the Park is submerged most of the time.

Throughout the Park's history, LCRA has not paid property taxes on the Park, claiming that the Park is exempt from taxation because LCRA is a governmental entity and the Park is used for public purposes. *See* Tex. Const. art. XI, § 9 ("The property of counties, cities and towns, owned and held only for public purposes . . . shall be exempt from forced sale and from taxation . . . ."); *Lower Colo. River Auth. v. Chem. Bank & Trust Co.*, 190 S.W.2d 48, 50 (Tex. 1945) (holding that LCRA's property devoted exclusively to public use is exempt from taxation under article XI, section 9). However, in 2014, BCAD determined for the first time that the entire Park was subject to taxation. LCRA filed a protest, and the BCAD review board issued a final order denying the protest. LCRA challenged this order in the trial court, and the court granted summary judgment in BCAD's favor. This appeal followed.[1]

---

[1] We review a trial court's ruling on a motion for summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Traditional summary judgment is proper only if the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

**DISCUSSION**

In its first appellate issue, LCRA contends that the trial court erred by granting summary judgment in BCAD's favor because the Park is exempt from taxation under article XI, section 9 of the Texas Constitution and section 11.11(a) of the Texas Tax Code. *See* Tex. Const. art. XI, § 9; Tex. Tax Code § 11.11(a) ("Except as provided by Subsections (b) and (c) of this section, property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes."). BCAD responds that the Park is not tax exempt because it is not being used exclusively for public purposes. According to BCAD, the fact that a private, for-profit partnership leases and manages the Park demonstrates that the Park is used at least in part for private purposes.[2]

The parties do not dispute the amenities that the Park offers, which are consistent with LCRA's statutory mandate and serve the public purpose of providing recreational opportunities to visitors. *See* Tex. Spec. Dist. Code § 8503.004(s) (authorizing LCRA to "develop and manage parks, recreational facilities, and natural science laboratories"); *id.* § 8503.023(a) (providing that, with certain exceptions, "[LCRA] may not prevent the public use of its lands for recreational purposes and fishing"). Moreover, at oral argument, BCAD conceded that if LCRA were to operate

---

[2] The parties dispute whether the Park must be used *exclusively* for public purposes to be tax exempt. *Compare* Tex. Const. art. XI, § 9 (exempting from taxation public property "owned and held *only* for public purposes" and "devoted *exclusively* to the use and benefit of the public") (emphasis added), *with id.* art. VIII, § 2(a) ("the legislature may, by general laws, exempt from taxation public property *used for public purposes*") (emphasis added), *and* Tex. Tax Code § 11.11(a) ("[P]roperty owned by this state or a political subdivision of this state is exempt from taxation if the property is *used for public purposes*.") (emphasis added). However, we need not resolve this question because, for the reasons given below, we conclude that the Park is used exclusively for public purposes.

3

the Park itself instead of leasing the property to a private entity, the Park would be used exclusively for public purposes and therefore would be tax exempt. Therefore, the question before us is a narrow one: Does the fact that LCRA leases the Park to a private for-profit entity to be operated as a public facility and park cause LCRA to forfeit the Park's tax exemption? We conclude that it does not.

The legislature has explicitly authorized LCRA to negotiate contracts with any firm or corporation "for the operation and maintenance" of its parks and recreational facilities. *See id.* § 8503.004(s). Here, the mechanism chosen by LCRA for operating the Park was a lease to a private limited partnership. This lease does not grant the Lessee the ability to use the Park however it chooses—instead, the lease limits the use of the property to "the development and operation of a public commercial recreation facility and public park." In other words, the lease specifically limits the Park's use to the public purposes authorized by statute. Therefore, even if the Lessee makes a profit from managing the Park, the use to which the property is being put remains the same—serving the public by offering recreational opportunities.

In arguing that the Park is not tax exempt, BCAD relies heavily on a statement by this Court that "Texas courts have consistently held that when public property is leased to a private party for private commercial purposes, such property is not 'used for a public purpose,' and therefore, is not entitled to a tax exemption." *City of San Antonio ex rel. City Pub. Servs. Bd. of San Antonio v. Bastrop Cent. Appraisal Dist.*, No. 03-06-00081-CV, 2006 WL 2986248, at \*3 (Tex. App.—Austin Oct. 19, 2006, pet. denied) (mem. op.). In *City of San Antonio*, a municipally owned utility company leased land containing lignite reserves to a private corporation. *Id.* at \*1. The lease entitled the private corporation to mine the lignite "for the *exclusive* use and benefit of [the corporation]."

4

*Id.* When the appraisal district revoked the public-property exemption for the leased land, the utility company sued. *Id.* This Court affirmed the district court's summary judgment in favor of the appraisal district because the utility company "has leased the lands in question to [the corporation] for private commercial purposes and is no longer using the lands in question for a public purpose." *Id.* at *4.

We conclude that there is no conflict between our holding in *City of San Antonio* and our decision today. In *City of San Antonio*, unlike in this case, the lease changed the fundamental purpose to which the land was being put. That is, the lease allowed the corporation to mine the lignite solely for its own private, commercial purposes, not for the use of the utility company. Therefore, the land no longer necessarily served the public purpose of providing lignite to generate energy for the utility company's customers. *See id.* (explaining that utility company "ceased using the land in question for any public purpose"). Here, LCRA's lease did not change the purpose of the Park—to provide recreational opportunities to visitors. Contrary to BCAD's arguments, the Park was not "leased to a private party for private commercial purposes," *see id.*, it was leased to a private party for *public* purposes. Because the purpose of the Park remained the same regardless of the entity managing the property, LCRA did not forfeit its tax exemption.

BCAD also relies on two cases in which our sister courts held that a medical office building owned by the Grand Prairie Hospital Authority was not entitled to a tax exemption because the authority leased part of the building to private physicians for their own commercial use. *See Grand Prairie Hosp. Auth. v. Dallas Cty. Appraisal Dist.*, 730 S.W.2d 849 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.*, 707 S.W.2d 281 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.). However, nothing in these opinions indicates that

5

the private physicians were using the leased property for the same public purposes served by the hospital authority. Instead, these opinions indicate that the lessees were using the property for their own private commercial activities and not for any public purposes. *See Dallas Cty. Appraisal Dist.*, 730 S.W.2d at 851; *Tarrant Appraisal Dist.*, 707 S.W.2d at 284.[3] In contrast, the Lessee in this case is undisputedly operating the Park for the same underlying purposes as LCRA would if LCRA were operating the Park itself.

Because we determine that the Park is being used exclusively for public purposes, we conclude that the trial court erred by granting summary judgment in favor of BCAD. Accordingly, we sustain LCRA's first appellate issue.[4]

## CONCLUSION

We reverse the trial court's summary judgment and remand this case to the trial court for further proceedings consistent with this opinion.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Remanded

Filed: June 7, 2016

_____

[3] We leave for another day whether we agree with the construction and interpretation of the constitutional provisions outlined in these opinions. *See* note 2, *supra*.

[4] Because we may reverse the trial court's summary judgment on the basis of LCRA's first issue, we need not address its remaining two issues.