BILL MEIER, JUSTICE
Appellant Tarrant Appraisal District (TAD) filed a motion for rehearing of our original opinion that issued on January 25, 2018. Appellee Tarrant Regional Water District (TRWD) filed a motion for en banc reconsideration of our original opinion. We deny both motions, withdraw our opinion and judgment dated January 25, 2018, and substitute the following.
I. INTRODUCTION
TRWD owns property along the Trinity River and leases part of it to a business entity that operates a restaurant. After failing to convince the Tarrant Appraisal Review Board that the property was exempt from ad valorem taxes, TRWD initiated the underlying tax appeal in the district court and obtained a summary judgment that the property was tax exempt.
TAD challenges the trial court's rulings denying its special exceptions and evidentiary objections, but the principal issue in this appeal is whether, and under what constitutional or statutory authority, TRWD's property is tax exempt. Although we agree with TAD that the property's eligibility for a tax exemption is limited to tax code section 11.11(a), which exempts public property "used for public purposes," Tex. Tax Code Ann. § 11.11(a) (West 2015), we disagree with TAD that a genuine issue of material fact exists concerning whether the property is used for public purposes. We conclude and hold that TRWD's property is tax exempt under *920 tax code section 11.11(a) because the property is used for public purposes as a matter of law. We will affirm.
II. BACKGROUND
A. TRWD and its Organic Statute
Article XVI, section 59, originally adopted in 1917 as an amendment to the Texas constitution, declares that "[t]he conservation and development of all of the natural resources of this State, and development of parks and recreational facilities, including the control, storing, preservation and distribution of ... the waters of its rivers and streams ... are each and all hereby declared public rights and duties." Tex. Const. art. XVI, § 59 (a). The amendment consequently authorizes the legislature to create "such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment." Id. § 59 (b). TRWD is one such water control and improvement district. Tarrant Reg'l Water Dist. v. Bennett , 453 S.W.3d 51, 53 (Tex. App.-Fort Worth 2014, pet. denied).
In addition to nonconflicting provisions contained in water code chapters 49 and 51, TRWD is governed by its Organic Statute, enacted in 1957. See Tex. Water Code Ann. §§ 49.002, 51.011 (West 2008) ; Tex. Water Aux. Laws, Table III, art. 8280-207 (West, Westlaw through 2017 1st C.S.) [Act of May 9, 1957, 55th Leg., R.S., ch. 268, § 1, 1957 Tex. Gen. Laws 569, amended by Act of May 15, 2001, 77th Leg., R.S., ch. 433, § 1, sec. 1, 2001 Tex. Gen. Laws 830]. Several provisions contained in TRWD's Organic Statute are particularly relevant to this appeal.
Added in 2001 and amended in 2005, section 17(a) permits TRWD to make and to enforce reasonable rules that are necessary to accomplish TRWD's "authorized purposes," which include (i) regulating "all recreational and business privileges on any ... body of land ... owned ... by the district," (ii) promoting "state or local economic development," and (iii) stimulating "business and commercial activity in the district." Tex. Water Aux. Laws, Table III, art. 8280-207 (West, Westlaw through 2017 1st C.S.) [Act of May 15, 2001, 77th Leg., R.S., ch. 433, § 1, sec. 17(a), 2001 Tex. Gen. Laws 831, amended by Act of May 28, 2005, 79th Leg., R.S., ch. 1363, § 1, sec. 17(a)(4), (6), 2005 Tex. Gen. Laws 4302] (italics removed).
Section 18 permits TRWD to "provide for or participate in the acquisition, construction, development, operation, or maintenance of recreational facilities intended to promote economic development to the full extent authorized by Section 59, Article XVI, Texas Constitution, the Water Code, or other applicable law." Id. [Act of May 28, 2005, 79th Leg., R.S., ch. 1363, § 3, sec. 18, 2005 Tex. Gen. Laws 4302].
Section 18A(a) permits TRWD to "provide for or participate in the acquisition, construction, development, operation, or maintenance of facilities intended to promote economic development to the full extent authorized by Section 52-a, Article III, Texas Constitution." Id. [Act of May 28, 2005, 79th Leg., R.S., ch. 1363, § 4, sec. 18A(a), 2005 Tex. Gen. Laws 4302] (italics removed).
And section 11, included in the Organic Statute's original enactment, exempts TRWD's property from ad valorem taxes:
The accomplishment of the purposes stated in this Act is for the benefit of the people of this State and for the improvement of their properties and industries, and the District, in carrying out the purposes of this Act will be performing an essential public function under the Constitution. The District shall not be required to pay any tax or assessment *921 on its properties or any part thereof, and the bonds issued hereunder and their transfer and the income therefrom, including the profits made on the sale thereof, shall at all times be free from taxation within this State.
Id. [Act of May 9, 1957, 55th Leg., R.S., ch. 268, § 11, 1957 Tex. Gen. Laws 574].
B. TRWD owns, and leases part of, the Property
Depicted in the image below, the triangular-shaped Property the subject of this tax appeal is located on the Trinity River, at 3201 Riverfront Drive in Fort Worth (the Property). According to Alan Thomas, TRWD's Deputy General Manager, TRWD acquired the Property in connection with a federal control project known as "Program D." Undertaken in concert with the United States Army Corps of Engineers, the program's purpose was to control flooding on the Clear Fork Trinity River. TRWD must maintain ownership of the Property.
Bisecting the Property and the Trinity River is a stretch of the Trinity Trails, a system of public trails and amenities that TRWD constructed, owns, and maintains. In an effort to counteract a lack of use outside of certain areas along the trails and "to encourage development of river-facing businesses on TRWD's property and adjoining properties," TRWD determined to improve and to lease the Property.
In March 2011, TRWD leased 10,295 of the Property's then-existing 50,688 square feet to chef Tim Love's River Shack, LLC. Under the lease, TRWD agreed to construct a building (or pavilion) on the Property, and River Shack agreed to operate a restaurant-the Woodshed Smokehouse. The lease limits River Shack's permitted uses of the leased Property to the following: "restaurant (eat-in and take-out) with alcohol sales, recreational activities and entertainment, including live music to the *922 extent permitted by applicable municipal ordinances." River Shack pays TRWD rent based on a percentage of its annual sales-between 4% and 6%-and Thomas confirmed that "[a]ll income received by TRWD from the [lease] is deposited into the general fund of TRWD and used exclusively for [ ] TRWD's public purposes." The lease terminates if the United States Army Corps of Engineers determines that the leased premises must be removed or materially altered.
The portion of the Property that River Shack does not lease consists primarily of common areas-"that part of the [Property] intended for the common use of [River Shack], its employees, customers and other invitees, and the general public, especially members of the general public utilizing the Trinity River and Trinity Trails"-and a parking lot, which is reserved for River Shack's exclusive use during business hours. Tim Love stated in his affidavit that the Woodshed Smokehouse "routinely provides free concerts of local singers and bands on the pavilion area shared with the public," "sponsors runs and walks on the Trinity Trail System," "passes out free water and Gatorade to the trail users," and provides "games and recreational equipment (such as ping pong and corn hole) for the public's use on the common areas located on the Property." The lease obligates River Shack to make its restrooms available to "all persons" on the Property.
C. Tax-exemption denial and district-court appeal
At some point, TRWD received notice that TAD had proposed to deny TRWD an exemption from paying ad valorem taxes on the Property. TRWD protested the decision before the Tarrant Appraisal Review Board, and it issued orders in February 2016 denying TRWD an exemption on 35,067 square feet of the Property but granting TRWD an exemption on 11,472 square feet of the Property for the tax years 2012, 2013, 2014, and 2015. According to TAD, the portion of the nonexempt Property includes "the restaurant building itself, the off-street parking lot provided for Woodshed Smokehouse's exclusive use during its hours of operation and at other specified times, the landscaped areas on and around that building and parking lot, and associated sidewalks and entryways providing ingress and egress for them." The exempt property includes "a grassy playground, bike racks, water fountain, park bench, public toilet, trailside shelter, and associated sidewalks and on-street parking."
TRWD appealed the review board's decisions by filing a petition in the district court. TRWD later filed a motion for summary judgment, arguing that the Property was tax exempt as a matter of law. TAD responded and filed special exceptions and objections. The trial court granted TRWD's motion and ordered that TRWD "is not required to pay for years 2012 through 2015 any ad valorem tax or assessment on the" Property and that TAD "shall correct the appraisal roll, tax bill, and such other records so that they conform to the" trial court's judgment. TAD appeals.
III. SUMMARY JUDGMENT STANDARD OF REVIEW
In a summary-judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c) ; Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009). In our de novo review, we consider the evidence presented in the light most favorable to the *923 nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. Mann Frankfort , 289 S.W.3d at 848. When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any independent summary-judgment ground is meritorious. FM Props. Operating Co. v. City of Austin , 22 S.W.3d 868, 872 (Tex. 2000).
IV. THE PROPERTY'S TAX-EXEMPT STATUS
In its first issue, TAD argues that the trial court erred by granting summary judgment for TRWD because under the relevant constitutional, statutory, and caselaw authorities, TRWD did not prove, as a matter of law, that the Property is tax exempt. Specifically, TAD argues that the Property is not tax exempt under section 11 of TRWD's Organic Statute because that provision is a void special law in violation of article VIII, section 2(a) and article III, section 56(a)(22) of the Texas constitution ; because the tax code controls over the Organic Statute, as evidenced by tax code section 1.02 and the tax code's enabling language repealing any conflicting laws; and because the conflicts provision contained in section 22 of the Organic Statute, added in 2001, does not render the Organic Statute otherwise applicable. TAD argues that the Property's tax-exempt status should instead be determined pursuant to tax code section 11.11(a), which TAD contends applies only when public property is used exclusively for the use and benefit of the public. Because, according to TAD, "a for-profit company is leasing the property and operating a restaurant and bar on the property for its own financial gain," the Property is not tax exempt under tax code section 11.11(a).
TRWD responds that the Property is tax exempt under article VIII, section 2(a) of the Texas constitution and its enabling statute, tax code section 11.11(a), because water control and improvement districts created under article XVI, section 59, like TRWD, serve a public purpose as a matter of law; because TRWD's Organic Statute declares a public use of the property; and because TRWD uses the Property for public purposes even though it leases part of it to River Shack, as neither article VIII, section 2(a) nor tax code section 11.11(a) require exclusive public use. TRWD further argues that the Property is alternatively tax exempt under article XI, section 9 of the Texas constitution because it is devoted exclusively to public use, that the Organic Statute's section 11 either is not a void local or special law or is a constitutionally-authorized local or special law, and that the Organic Statute does not conflict with the tax code, but even if it did, the Organic Statue would control.
In our original opinion, we strove to address the parties' detailed arguments, and we divided our analysis into three primary sections-(1) section IV.B, which addressed the tax-exempt status of the Property under article XI, section 9 ; (2) section IV.C, which addressed the tax-exempt status of the Property under the Organic Statute; and (3) section IV.D, which addressed the tax-exempt status of the Property under article VIII, section 2(a) and tax code section 11.11(a). On reconsideration, TRWD argues that we should remove the sections of our original opinion that addressed the Property's tax-exempt status under article XI, section 9 and under the Organic Statute because no part of our holding under tax code section 11.11(a) relied upon those sections, rendering them advisory. TRWD also emphatically challenges virtually every aspect of our analysis of section 11 of the Organic Statute. Because, under these circumstances, *924 we are sympathetic to TRWD's concerns about issuing an advisory opinion, and because we are not altering the holding in our original opinion that the Property is exempt under tax code section 11.11(a), we remove the sections of our original opinion that addressed article XI, section 9 and section 11 of the Organic Statute, and we will not address any sub-arguments related to those matters. See Tex. R. App. P. 47.1 ; San Antonio Gen. Drivers, Helpers Local No. 657 v. Thornton , 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957) ("A court will not pass on the constitutionality of a statute if the particular case before it may be decided without doing so.").
A. Standard of review in tax-exemption cases and construction rules
In a tax exemption case, the claimant bears the burden of "clearly showing" that an exemption applies. Tex. Student Housing Auth. v. Brazos Cty. Appraisal Dist. , 460 S.W.3d 137, 140-41 (Tex. 2015) (quoting N. Alamo Water Supply Corp. v. Willacy Cty. Appraisal Dist. , 804 S.W.2d 894, 899 (Tex. 1991) ). Exemptions cannot be raised by implication but must affirmatively appear in the authority relied upon. Bullock v. Nat'l Bancshares Corp. , 584 S.W.2d 268, 272 (Tex. 1979). Although we normally resolve all doubts in favor of the taxing authority, when the claimant is a water control and improvement district, like TRWD, we resolve any doubts in its favor. Lower Colo. River Auth. v. Chem. Bank & Trust Co. , 144 Tex. 326, 331, 190 S.W.2d 48, 50 (1945) (discussing with approval Bexar-Medina-Atascosa Ctys. Water Improvement Dist. No. 1 v. State , 21 S.W.2d 747, 749 (Tex. Civ. App.-San Antonio 1929, writ ref'd) ).
This tax appeal requires us to construe several constitutional and statutory provisions. When construing the Texas constitution, "the fundamental guiding rule is to give effect to the intent of the makers and adopters of the provision in question." Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp. , 283 S.W.3d 838, 842 (Tex. 2009). We presume that the language was carefully selected, and we rely heavily on the literal text to give effect to its plain language. Id. ; see Doody v. Ameriquest Mortg. Co. , 49 S.W.3d 342, 344 (Tex. 2001).
Similarly, when construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. State v. Shumake , 199 S.W.3d 279, 284 (Tex. 2006). We seek that intent first and foremost in the statutory text. Lexington Ins. Co. v. Strayhorn , 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008) ; see Tex. Gov't Code Ann. § 311.011(a) (West 2013). We consult extratextual aids only when statutory text is ambiguous. Entergy Gulf States, Inc. v. Summers , 282 S.W.3d 433, 437 (Tex. 2009).
B. The Property is tax exempt under tax code section 11.11(a)[1]
TAD argues that the "only legal basis for any tax exemption on the Woodshed Smokehouse Property is through section 11.11(a)" of the tax code.
*925 It principally relies upon the following two premises:
• "Over many decades and many cases, [Texas courts] ... have strengthened the public use prong by blending the language of [ article VIII, section 2 and article XI, section 9 of the Texas constitution ] into a single expression of the public use requirement: To qualify for exemption under the Constitution and the Tax Code, public property must be held only for public purposes and devoted exclusively to the use and benefit of the public "; and
• " 'Texas courts have consistently held that when public property is leased to a private party for private commercial purposes, such property is not "used for a public purpose," and therefore, is not entitled to a tax exemption.' "
Combining the two, TAD argues that the Property is not tax exempt under tax code section 11.11(a) because it "is being used for business operations and not for the exclusive use and benefit of the public." We disagree with TAD that section 11.11(a) contains an exclusive public-use requirement and that the Property is not being "used for public purposes."
1. Neither article VIII, section 2(a) nor tax code section 11.11(a) contain an exclusive public-use requirement.
Article VIII, section 2(a) provides in relevant part that "the legislature may, by general laws, exempt from taxation public property used for public purposes." Tex. Const. art. VIII, § 2 (a). The constitutional provision "vests in the Legislature the power to determine whether or not the public property therein referred to shall be exempted from taxation." A&M Consol. ISD v. City of Bryan , 143 Tex. 348, 350, 184 S.W.2d 914, 915 (1945). The legislature "has exercised the authority so vested in it" by providing in tax code section 11.11(a) that "property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes."[2] Tex. Tax Code Ann. § 11.11(a) ; A&M Consol. ISD , 143 Tex. at 350, 184 S.W.2d at 915.
Article XI, section 9 of the Texas constitution also exempts certain property from taxation. It provides in relevant part that the "property of counties, cities and towns, owned and held only for public purposes, ... and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation...." Tex. Const. art. XI, § 9 (emphasis added). The supreme court has construed article XI, section 9 to exempt "all public property used for public purposes even though not owned by a county, city or town." Leander ISD v. Cedar Park Water Supply Corp. , 479 S.W.2d 908, 911 (Tex. 1972) (discussing holding in Chem. Bank & Trust Co. , 144 Tex. at 333-34, 190 S.W.2d at 51-52, that appellant, a governmental agency, was exempt from taxation under article XI, section 9 ); see Satterlee v. Gulf Coast Waste Disposal Auth. , 576 S.W.2d 773, 779 (Tex. 1978) (op. on reh'g) (making similar observation but declining to reconsider holding in Chemical Bank & Trust because public-purpose and exclusive-use requirements not met).
Article XI, section 9 plainly contains an exclusive public-use requirement. However, while article VIII, section 2(a) of the Texas constitution contains an exclusive-use requirement for religious and school-related property to be tax exempt, it does not require that public property be devoted exclusively for the use and benefit of the public to be tax exempt.
*926 Tex. Const. art. VIII, § 2 (a). If the makers and adopters of article VIII, section 2(a) had intended for public property to be tax exempt only when devoted exclusively for use and benefit of the public, then they could have required so, but they did not. We presume that the decision was intentional. See Harris Cty. Hosp. Dist. , 283 S.W.3d at 842.
Similarly, while at least one part of tax code section 11.11 contains an exclusive-use requirement, section 11.11(a) plainly does not. Compare Tax Code Ann. § 11.11(a)with id. § 11.11(f)(2). Not only should we "presume the Legislature included words it wanted to include and excluded words it wanted to exclude," Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n , 518 S.W.3d 318, 361 (Tex. 2017), but we are also mindful that a statutory provision cannot replace constitutional requirements. N. Alamo Water Supply Corp. , 804 S.W.2d at 899. Thus, in enacting tax code section 11.11(a), the legislature was obligated to remain faithful to article VIII, section 2(a)'s specific language. See ids="9991375" index="46" url="https://cite.case.law/sw2d/804/894/#p899">id.
TAD's argument has no basis in the text of either article VIII, section 2(a) or tax code section 11.11(a). See Shumake , 199 S.W.3d at 284 ; Harris Cty. Hosp. Dist. , 283 S.W.3d at 842. TAD's argument is instead based on several intermediate appellate court opinions, none of which we find persuasive.
Two cases considered whether a medical office building that was owned by the Grand Prairie Hospital Authority but leased in part to physicians who utilized it for private practice was exempt from taxation. Grand Prairie Hosp. Auth. v. Dallas Cty. Appraisal Dist. , 730 S.W.2d 849, 850 (Tex. App.-Dallas 1987, writ ref'd n.r.e.) ; Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist. , 707 S.W.2d 281, 282 (Tex. App.-Fort Worth 1986, writ ref'd n.r.e.). Citing the supreme court's opinion on rehearing in Satterlee , both courts construed tax code section 11.11(a) to require that the property in question be devoted exclusively to the use and benefit of the public. Dallas Cty. Appraisal Dist. , 730 S.W.2d at 850-51 ; Tarrant Appraisal Dist. , 707 S.W.2d at 284. Because the physicians were leasing part of the building for their own commercial enterprises, the courts of appeals held that the property was not tax exempt, as it was not devoted exclusively to the use and benefit of the public. Dallas Cty. Appraisal Dist. , 730 S.W.2d at 851 ; Tarrant Appraisal Dist. , 707 S.W.2d at 284.
The problem with the courts' analyses is that the opinion on rehearing in Satterlee had nothing to do with tax code section 11.11(a) ; it dealt with only article XI, section 9 of the Texas constitution, which as we explained above, does contain an exclusive-use requirement. Satterlee , 576 S.W.2d at 779. Because the analyses are inconsistent with section 11.11(a)'s plain language and misread Satterlee , we decline to follow Dallas County Appraisal District , and we overrule Tarrant Appraisal District insofar as it requires that property be devoted exclusively to the use and benefit of the public to be tax exempt under tax code section 11.11(a).[3]
TAD also relies on *927 City of San Antonio ex rel. City Public Services Board of San Antonio v. Bastrop Central Appraisal District , No. 03-06-00081-CV, 2006 WL 2986248 (Tex. App.-Austin Oct. 19, 2006, pet. denied) (mem. op.). In that case, the court of appeals held that City Public Services, a municipally owned utility company that provided electricity to retail customers in the San Antonio area, was not entitled to a tax exemption under article VIII, section 2 or tax code section 11.11(a) after it leased its lignite reserves on land that it owned to Alcoa, Inc. for private commercial purposes only. Id. at *1, *4. The court did not reach the argument "that article VIII, section 2-unlike article XI, section 9-does not expressly require exclusive use for a public purpose in order to receive a tax exemption" because City Public Services had completely "ceased using the land in question for any public purpose when it signed the lease with Alcoa." Id. at *4. As we explain below, unlike in City of San Antonio , the facts in this case do not involve a complete absence of public use, which would clearly disqualify property from being tax exempt under tax code section 11.11(a). City of San Antonio is inapposite.[4]
TAD also relies on Gables Realty, Ltd. v. Travis Central Appraisal District , a case that required the court of appeals "to determine whether Gables Realty's state-leased property [was] exempt under section 11.11 so that [tax code] section 25.07 bec[ame] operative." 81 S.W.3d 869, 874 (Tex. App.-Austin 2002, pet. denied). In resolving that issue, the court stated that "[s]ection 11.11(d) specifically addresses the situation here...." Id. at 873. Because the opinion did not address whether tax code section 11.11(a) requires exclusive public use, and because TAD asserts no argument under section 11.11(d), Gables Realty is inapposite.[5]
And finally, TAD directs us to Lower Colorado River Authority v. Burnet Central Appraisal District , but the court of appeals expressly declined to resolve whether tax code section 11.11(a) contained an exclusive public-use requirement because it concluded that the RV park was used exclusively for public purposes. 497 S.W.3d 117, 119 n.2 (Tex. App.-Austin 2016, pet. denied).
Tax code section 11.11(a)'s language is clear and unambiguous. We hold that to avail itself of the exemption contained in tax code section 11.11(a), TRWD had no obligation to prove that the Property was devoted exclusively to the use and benefit of the public. So long as the Property is "used for public purposes," TRWD is entitled to an exemption under tax code section 11.11(a).[6]
*928 2. The Property is "used for public purposes."
Initially, we note that TAD's argument is worded loosely enough to be construed several different ways. On one hand, TAD argues that like the property in City of San Antonio , which had no public purpose after City Public Services leased its lignite reserves to Alcoa, "the nature and use of the [P]roperty [here] was fundamentally changed from public to private when TRWD leased the property" to River Shack to operate a restaurant and bar on the Property for its own financial gain. [Emphasis added.] To be clear, whether section 11.11(a) contains an exclusive public-use requirement has no bearing whatsoever on this specific argument because if the Property had no public purpose after TRWD leased it to River Shack, then undoubtedly, it could not be "used for public purposes" and tax exempt under section 11.11(a). Like the court in City of San Antonio addressed the issue in that case, we can resolve this specific argument by simply examining whether the Property continued to have a public purpose after it was leased to River Shack. See City of San Antonio , 2006 WL 2986248, at *4 (declining to consider whether section 11.11(a) requires exclusive public use because City Public Services "ceased using the land in question for any public purpose when it signed the lease with Alcoa").
On the other hand, by relying on the Grand Prairie Housing Authority cases, which held that the medical building was not tax exempt because it was not being used exclusively for the use and benefit of the public, TAD appears to argue that the Property is not tax exempt because River Shack is operating a restaurant for financial gain and, therefore, not using the Property exclusively for the use and benefit of the public. We determined above that section 11.11(a) does not contain an exclusive public-use requirement, but that does not end the inquiry. We must still examine the record to determine whether TRWD established, as a matter of law, that the Property is being "used for public purposes." See Tex. Tax. Code Ann. § 11.11(a). Of course, if the Property is so used, then logically, it cannot have "no public purpose." Our resolution of this argument will therefore necessarily resolve TAD's "no public purpose" argument immediately above.
One thing is certain: Whether property is used for public purposes is a highly fact-specific question that, we believe, must be answered on a case-by-case basis. "Public purpose is not easily defined. It is a fluid concept which changes with time, place, population, economy, and countless other circumstances." S.C. Pub. Serv. Auth. v. Summers , 282 S.C. 148, 318 S.E.2d 113, 114 (S.C. 1984). On one occasion, our supreme court explained that "[i]n determining whether or not public property is used for a public purpose[,] the test appears to be whether it is used primarily for the health, comfort, and welfare of the public." A&M Consol. ISD , 143 Tex. at 351, 184 S.W.2d at 915 ("It is sufficient if it be property which all of the public has a right to use under proper regulations.").
TAD concedes that the Property was used for public purposes before TRWD signed the lease with River Shack. The question, however, is whether the Property continues to be so used after the lease was executed and River Shack began operating a restaurant for profit. Contrary to TAD's overly narrow characterization, the Property is not some run-of-the-mill strip mall that TRWD developed merely for retail purposes. River Shack no doubt operates a business for profit, but that is only one facet of a larger project that, at its core, unquestionably has a public purpose.
*929 The legislature amended TRWD's Organic Statute in 2001 and 2005 to authorize TRWD to, respectively, provide for "the acquisition, construction, development, operation, or maintenance of recreational facilities" and of "facilities intended to promote economic development to the full extent authorized by Section 52-a, Article III, Texas Constitution." Tex. Water Aux. Laws, Table III, art. 8280-207 (West, Westlaw through 2017 1st C.S.) [Act of May 28, 2005, 79th Leg., R.S., ch. 1363, § 3, sec. 18, § 4, sec. 18A(a), 2005 Tex. Gen. Laws 4302] (italics removed). Consistent with those purposes, Alan Thomas opined in his affidavit that TRWD entered into the lease with River Shack "to encourage development of river-facing businesses on TRWD's property and adjoining properties." He also confirmed that the Property "was intended and designed as a trail amenity to provide the public with recreational enhancements ancillary to the public's use of the Trinity Trails system." Thus, as TRWD's summary-judgment evidence conclusively demonstrates, TRWD leased the Property to River Shack in connection with its optimistic plan to develop the Property for economic and recreational purposes. The Property is used primarily for the comfort and welfare of the public, and the income that TRWD receives from the lease is deposited into TRWD's general fund and used for public purposes. With its pavilion, common areas, and location adjacent to the Trinity Trails, and developed and leased for economic and recreational purposes, the Property is used for public purposes.
Both the Organic Statute and the lease confirm the Property's public use. TRWD's Organic Statute provides that "[t]he accomplishment of the purposes stated in [the Organic Statute are] for the benefit of the people of this State." Tex. Water Aux. Laws, Table III, art. 8280-207 (West, Westlaw through 2017 1st C.S.) [Act of May 9, 1957, 55th Leg., R.S., ch. 268, § 11, 1957 Tex. Gen. Laws 574] (emphasis added). While this provision is a strong indication that the Property is used for public purposes, even better evidence is found in the lease. See Burnet Cent. Appraisal Dist. , 497 S.W.3d at 120 (examining lease to determine whether property had public purpose); City of San Antonio , 2006 WL 2986248, at *4 (same). It states that the Property "is intended for the use and enjoyment of the general public, especially including those engaged in activities on the Trinity River which flows adjacent to the southern boundary of the [Property] and those using [the] Trinity Trails." And one of the permitted uses of the leased property is "recreational activities and entertainment, including live music." Thus, unlike the lease in City of San Antonio , which expressly disavowed any public purpose for the property there, the lease here expressly confirms that the Property is used for public purposes. Any incidental private benefit that River Shack earns from its operation of the restaurant cannot somehow eliminate the public purposes for which the Property is clearly used.
We hold that, as a matter of law, the Property is "used for public purposes." Tex. Tax Code Ann. § 11.11(a). The trial court did not err by granting summary judgment for TRWD. We overrule TAD's first issue.
V. SUMMARY-JUDGMENT STANDARDS
In its second issue, TAD argues that the trial court failed to apply proper summary judgment standards, including that in ruling on TRWD's motion for summary judgment, the trial court should have deferred, or at least afforded some measure of deference, to the Tarrant Appraisal Review Board's determination that the Property is not tax exempt.
*930 TRWD pursued an appeal of the review board's decision pursuant to tax code chapter 42. Not only is the scope of review in such a proceeding "trial de novo," but the trial court is expressly prohibited from "admit[ting] in evidence the fact of prior action by the appraisal review board ..., except to the extent necessary to establish jurisdiction." Tex. Tax Code Ann. § 42.23(a), (b) (West Supp. 2017). This unambiguous scope of review statutorily foreclosed the trial court from affording any deference to the review board's determination. See Bd. of Appraisal Review for Travis Cty. Appraisal Dist. v. Protestant Episcopal Church Council of Diocese of Tex. , 676 S.W.2d 616, 623 (Tex. App.-Austin 1984, writ dism'd) (reasoning similarly). Nevertheless, insofar as the construction rule expressed in Tarrant Appraisal District v. Moore has any potential application here, we do not afford TAD's construction of section 11.11(a) serious consideration because it contradicts tax code section 11.11(a)'s plain language, as we held above. See 845 S.W.2d 820, 823 (Tex. 1993) ("Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.").
TAD argues that TRWD failed to establish that the Property was tax exempt as a matter of law, but our analysis over the foregoing pages shows, and holds, otherwise. We overrule TAD's second issue.
VI. SPECIAL EXCEPTIONS AND EVIDENTIARY OBJECTIONS
In its third issue, TAD argues that the trial court abused its discretion by overruling its special exceptions to TRWD's summary-judgment motion. The gist of its argument is that TRWD's motion did not sufficiently identify the grounds on which it was based. But as we touched on above, TRWD's motion was sufficient to give TAD fair notice of its grounds. Moreover, even if the trial court did abuse its discretion, we fail to see how TAD was in any way harmed; all arguments were preserved for appellate review, and both sides have provided this court with a substantial amount of briefing and argument, demonstrating a thorough knowledge of the overlapping issues in this complicated appeal. See Gause v. Gause , 496 S.W.3d 913, 919 (Tex. App.-Austin 2016, no pet.) ("In the absence of a showing of injury resulting from the denial of a special exception, the trial court's ruling will not be disturbed."); see also Tex. R. App. P. 44.1. We overrule TAD's third issue.
TAD argues in its fourth issue that the trial court abused its discretion by denying its objections to part of TRWD's summary-judgment evidence-an engineering report, Alan Thomas's affidavit, and Tim Love's affidavit. No part of our analysis relied on the engineering report, and to the extent that we recited any of the facts contained in Thomas's and Love's affidavits, we did so largely for contextual purposes. As with the special exceptions, even if the trial court did abuse its discretion, we fail to see-nor does TAD otherwise sufficiently explain-how TAD was harmed by the trial court's rulings. See Miller v. Great Lakes Mgmt. Serv., Inc. , No. 02-16-00087-CV, 2017 WL 1018592, at *3 (Tex. App.-Fort Worth Mar. 16, 2017, no pet.) (mem. op.) ("Even if a trial court errs by excluding summary-judgment evidence, to obtain a reversal based on the exclusion, the appellant must demonstrate that the exclusion probably resulted in an improper judgment."); see also Tex. R. App. P. 44.1. We overrule TAD's fourth issue.
*931 VII. CONCLUSION
Having overruled TAD's four issues, we affirm the trial court's judgment.

TAD contends that TRWD failed to preserve its summary-judgment argument that the Property is tax exempt under article VIII, section 2(a), but the record shows that TRWD argued below that its property was used for public purposes. Judging by the briefing, TAD had fair notice of TRWD's argument. See City of Roanoke v. Town of Westlake , 111 S.W.3d 617, 633 (Tex. App.-Fort Worth 2003, pet. denied) ("Grounds are sufficiently specific if they give 'fair notice' to the nonmovant.").

There is no dispute the Property is public property.

TAD argues on rehearing that we should not overrule our thirty-year-old opinion in Tarrant Appraisal District because it has "helped guide appraisal district work for decades," but we cannot ignore our obligation to properly apply the law, even if Tarrant Appraisal District is three decades old.

Insofar as City of San Antonio cited the Grand Prairie Hospital Authority cases with approval after declining to address whether tax code section 11.11(a) requires exclusive public use, we disagree with that part of the memorandum opinion. See City of San Antonio , 2006 WL 2986248, at *4.

The opinion cited tax code section 11.11(a) after stating that "property owned by the State 'that is not used for public purposes is taxable,' " but the quoted language is contained in tax code section 11.11(d), not section 11.11(a). Gables Realty, Ltd. , 81 S.W.3d at 873.

This construction does not render article XI, section 9 meaningless. As Justice Stayton observed in Galveston Wharf Co. v. City of Galveston , the words "held only" and "devoted exclusively," as used in article XI, section 9, "would seem to convey the idea that a municipal corporation may own property which will not be exempt from taxation." See 63 Tex. 14, 23-24 (1884) (emphasis added). If the "devoted exclusively" language contained in article XI, section 9 is so construed, and because tax code section 11.11(a) covers only "public property," then the provisions have distinct meanings and applications. This is yet another reason why we cannot superimpose article XI, section 9's "devoted exclusively" language upon tax code section 11.11(a) -they appear to serve different purposes.