

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00053-CV

———————————————

ALICE JONES MCDANIEL, INDEPENDENT EXECUTRIX OF THE ESTATE OF
JAN LYNN JONES, DECEASED, Appellant

V.

CROWLEY INDEPENDENT SCHOOL DISTRICT; AND OMNI FINANCIAL
GROUP, INC., D/B/A U.S. OMNI, Appellees

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-301726-18

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Opinion by Justice Wallach

## OPINION

Appellant Alice Jones McDaniel, Independent Executrix of the Estate of Jan Lynn Jones, Deceased,[1] originally sued Appellee Crowley Independent School District (CISD) seeking to recover the death benefits under a Section 457 deferred compensation plan to which Decedent had subscribed while she was employed by CISD. Omni Financial Group, Inc. (Omni) was subsequently joined as a defendant as the third-party administrator of the CISD plan. In her live pleading, Executor sought recovery for breach of contract, breach of fiduciary duty, constructive trust, negligence, negligence per se, declaratory judgment, and exemplary damages.

When the lawsuit was originally filed, and for a significant period thereafter, none of the parties produced a beneficiary designation executed by Decedent for the death benefits. Thus, Executor claimed that the estate was the proper beneficiary by default under the Texas Property Code. Eventually, the annuity contract issuer for the plan, Lincoln National Life Insurance Company (Lincoln), produced a beneficiary designation executed by Decedent that showed her niece and nephew as equal beneficiaries. The death benefits were eventually paid to the niece and nephew without objection by Executor.

Appellees filed pleas to the jurisdiction contending that (1) because the plan's death benefits were not assets of the estate subject to the Executor's control,

---

[1]We will use "Executor" to refer to McDaniel and use "Decedent" to refer to Jones.

2

Executor had no standing to sue; (2) with the production of the beneficiary designation by Lincoln designating niece and nephew as beneficiaries, Executor's claims became moot because the estate had no interest in the benefits; and (3) Executor had no authority to enforce the annuity contract. After conducting two hearings, and after death-benefit payments were made to the niece and nephew, the trial court signed separate orders granting Appellees' pleas to the jurisdiction and dismissed the cases with prejudice. This appeal ensued. We will affirm the dismissals of the Executor's claims for want of subject matter jurisdiction.

## I. Background

Since our focus will be primarily on Executor's pleaded allegations, this background is largely based on the allegations of the Third Amended Original Petition, Executor's live pleading, unless otherwise indicated.[2] Executor alleged that

---

[2]On October 5, 2023, Executor filed a First Amended Motion for Leave to File the Third Amended Petition, less than seven days before the then-current trial setting. Omni filed its opposition to the requested leave to amend on October 6, 2023. The court never ruled on the motion for leave. The case did not go to trial and Executor filed her Third Amended Original Petition on November 8, 2023. The hearings on the pleas to the jurisdiction were not held until January 6 and 25, 2024. The record does not reflect any scheduling order that might have had a deadline for filing the pleas to the jurisdiction, and a hearing on a plea to the jurisdiction is not a "trial" for purposes of Rule 63. Tex. R. Civ. P. 63. Therefore, the Third Amended Original Petition was the Executor's live petition. *See Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.*, 707 S.W.2d 281, 283 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.), *overruled on other grounds by Tarrant Appraisal Dist. v. Tarrant Reg'l Water Dist.*, 547 S.W.3d 917, 927 (Tex. App.—Fort Worth 2018, no pet.); *see also Patel v. Trevino*, No. 01-20-00445-CV, 2022 WL 3720135, at *1 n.4 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet.) (mem. op.); *City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 110 (Tex. App.—Dallas 2013, no pet.).

3

CISD, a political subdivision of the State of Texas, offered a Section 457 qualified deferred compensation plan (Plan) for its employees. Omni was the third-party administrator of the Plan. Lincoln was the annuity contract issuer for the Plan.

Decedent was a teacher contracted by CISD from 1993 through 1997. She became a participant in the Plan in 1993. On or about October 26, 1993, Decedent executed a document entitled The Lincoln National Life Insurance Company Deferred Annuity Application (Application), which specifically provided that the funds being invested in the annuity contract were in a Section 457(b) governmental plan. *See* 26 U.S.C.A. § 457 (governing "[d]eferred compensation plans of State and local governments and tax-exempt organizations"). Under an eligible Section 457(b) governmental plan, a participant may elect to defer a portion of her compensation for federal income taxation purposes for a period extending to the date of the participant's termination or beyond. *Id.* The portion of an employee's compensation being deferred is invested by the employer into an annuity contract to set aside funds for the payment of benefits payable to the participant pursuant to the provisions of the plan.

Under such a plan, the employer is required to be both the owner and the beneficiary of an annuity contract purchased by the employer so that the funds can be redeemed by the employer to make distributions to the plan participant in accordance with the plan. Consistent with those requirements, the Application reflects ClSD as

4

both the owner and the beneficiary of the proceeds payable under the annuity contract.

Although Decedent, as participant, had no right to designate a beneficiary of the annuity contract, she did have a right to designate a beneficiary of her interest in the Plan, i.e., the death benefit. Decedent signed the Deferred Compensation Plan Employee Participation Agreement (beneficiary designation) on October 25, 1993. This document, which did not surface until well after the lawsuit was filed, designated Decedent's niece and nephew as beneficiaries of the death benefit.

Executor alleged that the Texas Government Code provides that amounts deferred under a Section 457 plan are held in trust:

> [a]n Employee's deferred amounts and investment income under a [Section] 457 plan and the qualified investment products in which the amounts are invested are held in trust for the exclusive benefit of participants and their beneficiaries in accordance with Section 457 of the Internal Revenue Code of 1986[, as amended]. For purposes of this Section, custodial accounts and contracts described in Section 457 are treated as trusts.

Tex. Gov't Code Ann. § 609.009.

Executor further alleged that the Code provides that a plan administrator must have procedures regarding an employee's designation of beneficiaries and the distribution of the employee's interest in a plan:

Distribution

A Plan Administrator shall develop and implement procedures for:

5

(1) the designation by a participating employee of a beneficiary to receive the employee's deferred amounts and investment income after the employee's death; and

(2) the distribution of a participating employee's deferred amounts and investment income to the employee or the employee's beneficiary, as appropriate, because of the employee's death or termination of employment, financial hardship, or another reason permissible under federal law.

*Id.* § 609.111.

Executor also alleged that the Texas Property Code addresses unclaimed benefits:

Unclaimed Benefits

If a trustee does not claim a death benefit on or before the first anniversary of the employee's or participant's death or if satisfactory evidence is provided to a trustee, custodian, other fiduciary, or other obligor of the employees' trust, contract purchased by the employees' trust, or the retirement account before the first anniversary of the employee's or participant's death that there is or will be no trustee to receive the death benefit, the death benefit shall be paid:

(1) according to the beneficiary designation under the plan, trust, contract, or arrangement providing the death benefit under the employees' trust or retirement account; or

(2) if there is no designation in the employees' trust or retirement account, to the personal representative of the deceased employee's or participant's estate.

Tex. Prop. Code Ann. § 121.054.

In the spring of 1997, CISD elected not to renew Decedent's employment contract for the following year. Decedent severed employment with CISD in approximately May or June of 1997. The funds contributed by Decedent as a

6

participant in the Plan (and the earnings thereon) remained in the Plan invested in the Lincoln Annuity Contract, as evidenced by quarterly statements from Lincoln, which were still being sent to Decedent at the time of her death on August 4, 2015, and afterwards.

In October 2017, Executor believed that the death benefits were the property of the estate as the default beneficiary under Texas Property Code Section 121.054(2). Over the next several months, Executor allegedly made inquiries with CISD and Lincoln about claiming the death benefits and obtaining the Plan documents, including the beneficiary designation. Her efforts were mostly futile. At one point, CISD's Board of Trustees asserted that CISD was claiming the death benefit as a gift. Eventually, CISD abandoned that position.

On July 3, 2018, Executor sent a letter to CISD demanding: (i) a copy of the Plan; (ii) a copy of the summary Plan description; (iii) a copy of the beneficiary designation form; and (iv) the current account balance of Decedent's interest in the Plan. CISD did not respond.

Executor then filed suit against CISD. The factual allegations of the Original Petition regarding CISD were largely the same as the Third Amended Petition being described herein and will not be summarized separately.[3] Executor also served CISD

---

[3]The legal theories asserted in the original petition were breach of fiduciary duty under Texas Government Code Section 609 and under the "Texas Trust Code," breach of contract, imposition of a constructive trust on the annuity proceeds, and punitive damages. No request for declaratory relief was alleged.

7

with a request for production seeking various documents, including those just mentioned. CISD answered with a general denial. CISD failed to produce the documents in response to the request.

Executor filed her First Amended Original Petition on July 22, 2019. Again, the factual allegations against CISD were largely the same as the Third Amended Petition being described herein and will not be summarized separately. Executor's legal theories were the same as the First Amended except she added a request for declaratory relief that the Estate is the beneficiary of Decedent's interest in the Plan and a request for attorney's fees as are just and equitable.

Executor moved for partial traditional summary judgment against CISD. In its response, CISD attached its original and amended answers to the request for production, producing the Omni Group, Inc. Model 457(b) Deferred Compensation Plan and the Lincoln Annuity Application, but denied that it was in possession of the beneficiary designation. The summary judgment was denied on November 19, 2019.

After learning of Omni's role as Plan administrator through the production of the Plan by CISD, Executor filed her Second Amended Original Petition on December 2, 2019, adding Omni as a defendant. The factual allegations giving rise to the claims are essentially as described herein under the Third Amended Petition and

8

will not be summarized separately.[4] She again sought declaratory relief and just and equitable attorney's fees through trial and on appeal.

After Executor obtained new counsel, she asked Lincoln to produce the previously requested Plan documents. Lincoln produced a copy of the beneficiary designation, which designated the niece and nephew as beneficiaries, that also showed that a copy of that document had been provided to CISD, which had never provided it to Executor.

In the Original, First, and Second Amended Petitions, Executor was, in essence, claiming to represent the estate as the contingent beneficiary of the death benefits under the Plan because the conditions for payment to the primary beneficiary had lapsed. In her Third Amended Original Petition, Executor explained that right as being based on Texas Property Code Section 121.054 (see above). New to her factual recitations in her Third Amended Petition was the fact that, based on the newly produced beneficiary designation, the actual primary beneficiaries were the niece and nephew. Despite that development, based on the above-referenced factual allegations,

---

[4]The allegations against Omni, as third party administrator, were that Omni: (1) breached an agreement between CISD and Decedent for payment of the sums due for the Plan's death benefit; (2) breached its fiduciary duty under Texas Government Code Section 609.009 for failing to properly ascertain the proper beneficiary under the Plan, failing to make distribution of the death benefit to the designated beneficiary, and failing to provide the requested Plan information in a timely fashion; and (3) breached its fiduciary duty under the Texas Trust Code by failing to remit funds due to Decedent and failing to carry out the provisions of the employee trust for Decedent's benefit.

9

Executor sought recovery for breach of fiduciary duty, breach of contract, fraudulent representations and concealment (CISD only), fraud (Omni), exemplary or punitive damages for fraud, negligence, negligence per se, and gross negligence, and actual and punitive damages. Executor sought imposition of a constructive trust on the death benefits to prevent unjust enrichment to CISD and Omni. Executor also sought declaratory judgment regarding the rightful entitlement to ownership of the death benefits. All the rights of recovery were hinged on Executor's alleged right to the Plan documents, information, and death benefits, and damages flowing from CISD's and Omni's failure or delay in providing such.

## II. Issues on Appeal

Executor raises three issues on appeal. First, she argues she did not lack standing. Second, she argues her claims did not become moot. Third, she alleges that the trial court placed conditions on dismissal of the case for lack of subject matter jurisdiction, thereby committing harmful error and depriving Executor of a trial on the merits of her claims. We will affirm the trial court's dismissal orders. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 616 (Tex. 2018) (stating that if the pleadings or record conclusively negate the existence of jurisdiction or if, even with remand, the plaintiff would be unable to show the existence of jurisdiction, the case should be dismissed without a remand); *Port of Corpus Christi, LP v. Port of Corpus Christi Auth. of Nueces Cnty.*, No. 13-19-00304-CV, 2021 WL 499067, at *7 (Tex. App.—Corpus Christi–Edinburg Feb. 11, 2021, no pet.) (mem. op.).

### III. Standards of Review and Legal Principles

#### a. Subject Matter Jurisdiction Standards of Review

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction to hear a case. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). When the plea challenges the claimant's pleadings, we determine whether the claimant has pleaded facts that affirmatively demonstrate the trial court's jurisdiction, construing the pleadings liberally and in favor of the claimant. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In our review, we construe the pleadings liberally in favor of the pleader and look to the pleader's intent to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.*

When the challenge to jurisdiction challenges the existence of jurisdictional facts and the parties submit evidence relevant to the jurisdictional challenge, we consider that evidence when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 228; *City of Houston v. Aptim Env't & Infrastructure, LLC*, 693 S.W.3d 819, 823 (Tex. App.—Houston [14th Dist.] 2024, no pet.). When the jurisdictional issues implicate the merits of the plaintiff's claims, the standard of review for the jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228; *City of Houston*, 693 S.W.3d at 823. We take as true all evidence

11

favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d. at 228. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder. *Miranda*, 133 S.W.3d at 227–28; *City of Houston*, 693 S.W.3d at 823. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court may rule on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *City of Houston*, 693 S.W.3d at 823. Finally, as we have previously noted, "[w]hen the trial court grants a plea to the jurisdiction and does not state the basis of its ruling, we may affirm on any basis preserved in the record." *Mann v. Denton Cnty.*, No. 02-16-00030-CV, 2017 WL 526309, at *6 (Tex. App.—Fort Worth Feb. 9, 2017, pet. denied) (mem. op.).

### b. Governmental Immunity and Subject Matter Jurisdiction

"Governmental immunity protects all governmental entities against suits for their governmental actions, even when acting as employers." *Hillman v. Nueces Cnty.*, 579 S.W.3d 354, 358 (Tex. 2019). School districts such as CISD are political subdivisions of the state protected by governmental immunity. *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 403 n.3 (Tex. 2016). Included in the types of claims that are barred by governmental immunity are:

1) fraudulent inducement, Deceptive Trade Practice Act, and negligence claims, *Amador v. City of Irving*, No. 05-19-00278-CV, 2020 WL 1316921, at *8 (Tex. App.—Dallas Mar. 20, 2020, no pet.) (mem. op.);

12

2)      fraud and breach of fiduciary duty claims, *Tex. State Auditor's Off. v. Mora-Nichols,* No. 03-03-00113-CV, 2003 WL 22453830, at *3 (Tex. App.—Austin Oct. 30, 2003, no pet.) (mem. op.); and

3)      promissory estoppel, quasi-contractual, oral representations, negligent misrepresentation, and negligent or intentional torts, *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507–09 (Tex. App.—El Paso 2014, no pet.).

When the defendant is the state or a political subdivision thereof, the plaintiff must plead facts that affirmatively demonstrate that governmental immunity has been waived and that the court has subject matter jurisdiction. *Tex. Dep't of Transp. v. Primary Media Grp., Inc.*, No. 05-22-01273-CV, 2024 WL 3770330, at *6 (Tex. App.—Dallas Aug. 13, 2024, pet. filed) (mem. op.); *City of McKinney*, 412 S.W.3d at 109. Sovereign and governmental immunity sufficiently implicate subject matter jurisdiction such that it cannot be waived by failure to assert it in the trial court and can be raised for the first time on appeal, even if the appellate court raises it sua sponte. *Manbeck v. Austin ISD*, 381 S.W.3d 528, 530 (Tex. 2012); *see Clint ISD v. Marquez*, 487 S.W.3d 538, 558 (Tex. 2016); *San Jacinto River Auth. v. Dennis*, No. 14-18-00174-CV, 2021 WL 4270030, at *1 (Tex. App.—Houston [14th Dist.] Sept. 21, 2021, no pet.) (mem. op.).

It is the legislature's purview to waive governmental immunity by statute. *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853–54 (Tex. 2002). If the legislature elects to waive immunity by statute, it must do so by clear and unambiguous language. Tex. Gov't

Code Ann. § 311.034; *Hillman*, 579 S.W.3d at 359–60; *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

One source of statutory waiver of governmental immunity is Texas Local Government Code Section 271.152, which provides that

> [a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this [Chapter 271,] subchapter [I].

Tex Loc. Gov't Code Ann. § 271.152. School districts are "local government entities" for purposes of that subchapter. *Id.* § 271.151(3)(B). For purposes of the subchapter, a contract includes, "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2)(A).

The waiver of governmental immunity under Section 271.152 is limited to the recovery of items listed in Section 271.153. As pertinent to our case, the waiver includes the balance due under the contract plus reasonable and necessary attorney's fees that are equitable and just and interest as allowed by law; it does not include other consequential damages or exemplary damages. *Id.* § 271.153(a)(1), (3), (4), (b)(1), (2); *see Zachry Const. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 110 (Tex. 2014); *Amador*, 2020 WL 1316921, at *6.

Section 271.157 further provides that the subchapter does not waive governmental immunity for negligent or intentional torts. Tex. Loc. Gov't Code Ann.

§ 271.157; *see Gay*, 457 S.W.3d at 509. Further, Section 271.152 does not waive governmental immunity for declaratory judgment actions against local government entities to construe rights under a contract. *Lower Colo. River Auth. v. City of Boerne*, 422 S.W.3d 60, 67 (Tex. App.—San Antonio 2014, pet. dism'd) (affirming trial court's order granting city's plea to jurisdiction on plaintiff's declaratory judgment claim where plaintiff had also asserted related breach of contract claim against city); *see City of League City v. Galveston Cnty. Mun. Util. Dist. No. 6*, No. 01-23-00007-CV, 2023 WL 8814635, at *10 (Tex. App.—Houston [1st Dist.] Dec. 21, 2023, no pet.) (mem. op.); *Merrell v. City of Sealy*, No. 01-21-00347-CV, 2022 WL 3970078, at *10 (Tex. App.—Houston [1st Dist.] Sept. 1, 2022, no pet.) (mem. op.); *Multi-County Water Supply Corp. v. City of Hamilton*, 321 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2010, pet denied).

In determining what documents may constitute a contract for waiver purposes under Chapter 271, the Supreme Court has stated,

> [w]e have also read two ordinances and related documents together as a single agreement, and noted that "a court may determine, as a matter of law, that multiple documents comprise a written contract." *Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 840–41 (Tex. 2000). It is "well-established law that instruments pertaining to the same transaction may be read together to ascertain the parties' intent." *Id.* at 840. In addition, the multiple documents need not contain all of the terms; instead, only the essential terms are required. *Osborne v. Moore*, 112 Tex. 361, 247 S.W. 498, 499 (1923). Therefore, different ordinance sections can potentially be read together in a single contract. *See City of Fort Worth*, 22 S.W.3d at 840–41.

*City of Houston v. Williams*, 353 S.W.3d 128, 137 (Tex. 2011).

15

As further noted by the Court, the phrase "essential terms" is not defined in the Local Government Code but has been generally characterized to include the time of performance, the price to be paid, and the service to be rendered. *Id.* at 138–39. And in the context of employment agreements, it typically includes compensation, duties, or responsibilities. *Id.* at 139. A school district's employee benefit plan that provides its employees with medical benefits is a contract for purposes of Local Government Code Section 271.152. *S. Coast Spine & Rehab. PA v. Brownsville ISD*, No. 13-11-00270-CV, 2014 WL 1789546, at *3–4 (Tex. App.—Corpus Christi–Edinburg, Apr. 30, 2014, no pet.) (mem. op.).

### c. Standing and Subject Matter Jurisdiction

As recently noted by the Supreme Court,

[a] plaintiff must have standing to sue. Part of that analysis depends on whether a plaintiff has alleged an injury that her lawsuit can vindicate. A plaintiff's general disagreement about the governing law or what the law should be does not suffice. Otherwise, anyone could approach a court for an opinion about hypothetical applications of the law. Instead, the relief that a plaintiff seeks from a court must in some way rectify or compensate the plaintiff for her alleged injury. *In other words, to have standing, a plaintiff must allege a concrete personal injury that is both traceable to the defendant's conduct and likely redressable by the requested relief.*

*State v. Zurawski*, 690 S.W.3d 644, 657 (Tex. 2024) (emphasis added).

Since standing is a component of subject matter jurisdiction, we consider Executor's standing under the same standard by which we review subject matter jurisdiction generally. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 773 (Tex. 2020). That standard requires the pleader to allege facts that affirmatively demonstrate the

16

court's jurisdiction to hear the cause. *Harris Cnty.*, 547 S.W.3d at 612; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. When reviewing a trial court order dismissing a cause for want of jurisdiction, appellate courts "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (citing *Huston v. FDIC*, 663 S.W.2d 126, 129 (Tex. App.—Eastland 1983, writ ref'd n.r.e.)); *see Harris Cnty.*, 547 S.W.3d at 612–13. Factual allegations are accepted as true. *Town of Flower Mound v. Rembert Enter., Inc.*, 369 S.W.3d 465, 471 (Tex. App.—Fort Worth 2012, pet. denied).

Lack of standing deprives the trial court of subject matter jurisdiction. *Pike*, 610 S.W.3d at 773. To show standing, a plaintiff must demonstrate that: (1) it suffered a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable decision is likely to redress the injury. *In re Abbott*, 601 S.W.3d 802, 808 (Tex. 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992)). However, "a plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits; rather, a plaintiff lacks standing if its 'claim of injury is too slight for a court to afford redress.'" *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008)).

Standing may also be conferred by statute. *Aubrey v. Aubrey*, 523 S.W.3d 299, 311 (Tex. App.—Dallas 2017, no pet.). When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *Id.* The party

seeking relief must allege and establish standing within the parameters of the language used in the statute. *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966); *Whittier Heights Maint. Ass'n. v. Colleyville HomeOwners' Rights Ass'n*, No. 02-10-00351-CV, 2011 WL 2185699, at *3 (Tex. App—Fort Worth June 2, 2011, no pet.) (mem. op.); *Everett v. TK–Taito, L.L.C.*, 178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.). Mere reference to the elements of a statute and bare conclusions are not enough; the plaintiff must actually allege a violation of a statute by pleading facts that state a claim under the statute. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392, 394 (Tex. 2022).

### d.     Mootness and Subject Matter Jurisdiction

"The mootness doctrine limits courts to deciding cases in which an actual controversy exists." *Houston Chronicle Publ'g Co. v. Thomas*, 196 S.W.3d 396, 399 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *FDIC v. Nueces Cnty.*, 886 S.W.2d 766, 767 (Tex. 1994)). The doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events. *Matthews v. Kountze ISD*, 484 S.W.3d 416, 418–19 (Tex. 2016); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (quoting *Bexar-Medina-Atascosa Cntys. Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n*,

18

640 S.W.2d 778, 779–80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)); *Kessling v. Friendswood ISD*, 302 S.W.3d 373, 380 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). "If a controversy ceases to exist—'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'—the case becomes moot." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181 (1982)); *City of El Paso v. Waterblasting Tech., Inc.*, 491 S.W.3d 890, 904–05 (Tex. App.—El Paso 2016, no pet.) (holding that full performance of contract in question mooted suit to enjoin performance of that contract and payment). If a case becomes moot, the court loses jurisdiction over the claims. *City of El Paso*, 491 S.W.3d at 904. However, mootness, like standing, is generally analyzed on a claim-by-claim basis, with the claims subject to being grouped and analyzed by the injury alleged. *Cyphers v. Cunningham*, No. 02-23-00148-CV, 2024 WL 3819315, at *3 (Tex. App.—Fort Worth Aug. 15, 2024, no pet.) (mem. op.); *Blanton v. Red Desert Enters., LLC*, No. 02-23-00191-CV, 2024 WL 1925140, at *4 (Tex. App.—Fort Worth May 2, 2024, pet. denied) (mem. op.).

Even if a request for declaratory judgment is rendered moot on the substantive dispute, though, a request for attorneys' fees under the Declaratory Judgment Act may remain a live controversy, and the trial court retains jurisdiction. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005); *Camarena v. Tex. Emp. Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988); *Cyphers*, 2024 WL 3819315, at *4; *Ward v. Lamar Univ.*,

19

484 S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2016, no pet.). As noted by the Supreme Court,

> [w]hether an attorney's-fees claim breathes life into an otherwise moot appeal depends first on whether the claimant seeks the fees under a statute that authorizes fees only for a prevailing party or, alternatively, under a statute that permits fees based on equitable principles regardless of who prevails. If the statute allows a non-prevailing party to recover fees under equitable principles, the claim for fees always breathes life into a case that has otherwise become moot, because the trial court must always consider the relative merits of the parties' positions (among other factors) when exercising its discretion to award fees to either party.

*State ex rel Best v. Harper*, 562 S.W.3d 1, 7 (Tex. 2018) (citing *Allstate*, 159 S.W.3d at 643).

A claim for recovery of attorney's fees under Local Government Code Section 271.153(a)(3) requires the requesting party to be a prevailing party. Tex. Local Gov't Code Ann. § 271.153(a)(3). Even though it uses "equitable and just" language when referencing attorney's fees, it is not an independent ground for recovery of attorney's fees. *Cnty. of Galveston v. Triple B Serv., LLP*, 498 S.W.3d 176, 189 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (construing Tex. Loc. Gov't Code Ann. § 262.007, a similar limitation on waiver of local governmental entity contractual immunity, as failing to constitute a substantive basis for attorney's fees award and clarifying that statute only allows attorney's fees if another statute or contract allows them). While Section 271.152 waives sovereign (governmental) immunity to suit for qualifying local governmental entities for the purpose of adjudication of claims for breach of contract, Section 271.153(a)(3) expressly limits the amount of money that

20

can be awarded in an adjudication against a local governmental entity in such a breach of contract action. Tex. Loc. Gov't Code Ann. §§ 271.152, .153(a)(3). The latter section limits recovery of attorney's fees to those that are not only reasonable and necessary but also equitable and just. *Id.* § 271.153(a)(3). Further, Texas Civil Practice and Remedies Code Section 38.001 cannot serve as an independent right to recover attorney's fees for breach of contract against local governmental entities. *Cnty. of Galveston*, 498 S.W.3d at 189; *City of Corinth v. NuRock Dev. Inc.*, 293 S.W.3d 360, 370 (Tex. App.—Fort Worth 2009, no pet.); *see Wasson Ints., Ltd. v. City of Jacksonville*, No. 12-13-00262-CV, 2019 WL 7373851, at *10 (Tex. App.—Tyler Dec. 31, 2019, pet. denied) (mem. op. on reh'g).

## IV. Analysis

### a. CISD

CISD did not raise governmental immunity in the trial court or in this court. However, governmental immunity is jurisdictional and may appropriately be raised by this court sua sponte. CISD was alleged to be a school district and a political subdivision of the State of Texas. Hence, it was incumbent on Executor to affirmatively plead facts that established a waiver of governmental immunity. Construing the pleadings liberally in Executor's favor, we hold that Executor's original petition pleaded facts that would constitute waiver of governmental immunity as to the breach of contract claim but not as to her other claims.

As a school district, CISD qualifies as a local governmental entity authorized to enter into contracts for the provision of goods and services, thereby waiving immunity as to claims for breach of contract. Tex. Loc. Gov't Code Ann. § 271.152. It is undisputed that Decedent entered into an employment service contract with CISD. In connection with her employment with CISD, it is undisputed she entered into a properly authorized agreement for an employment benefit with CISD in the form of a Section 457 deferred compensation plan. The Plan agreement was lengthy, detailing the rights and obligations of the parties to the Plan, including the rights to the benefits of the Plan. Construing these documents together, we hold that Executor alleged facts in her original petition that pleaded the essential terms of a written contract and breach thereof such that CISD waived governmental immunity as to Executor's claims for breach of contract under the Local Government Code. *See Campbellton Rd., Ltd. v. San Antonio Water Sys. ex rel. City of San Antonio*, 688 S.W.3d 105, 115–16 (Tex. 2024); *Clear Creek ISD v. Cotton Com. USA, Inc.*, 529 S.W.3d 569, 585 (Tex. App.— Houston [14th Dist.] 2017, pet. denied). Despite Executor's failure to allege a specific statutory basis for waiver of immunity, her factual allegations for breach of contract were sufficient. *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 169 (Tex. 2016); *King v. Tex. Dep't of Hum. Servs. ex rel. Bost*, 28 S.W.3d 27, 32 (Tex. App—Austin 2000, no pet.). Because the factual allegations regarding breach of contract were essentially the same in Executor's subsequent petitions, they also raised

facts constituting a waiver of governmental immunity under the Local Government Code for breach of contract.

However, waiver of immunity for one claim is not a waiver as to all claims, and the trial court must dismiss those claims over which it has no subject matter jurisdiction. *Heckman*, 369 S.W.3d, at 150; *Amador,* 2020 WL 1316921, at *8. Excluding the claim for breach of contract, Executor's other claims in her original and subsequent petitions did not allege facts constituting a waiver of governmental immunity. When considering the facts pleaded, all of Executor's other claims involved intentional or negligent torts, which do not qualify for immunity waiver under the Local Government Code, and Executor did not affirmatively plead any other waiver of immunity. *See Amador*, 2020 WL 1316921, at *8; *Gay*, 457 S.W.3d at 509; *Tex. State Auditor's Off.*, 2003 WL 22453830, at *3. Therefore, the trial court's dismissal of those claims was proper. Likewise, based on the authorities cited above, Executor's claim for declaratory relief for construction of her contract rights was barred by governmental immunity. *See Lower Colo. River Auth.*, 422 S.W.3d at 67; *City of League City*, 2023 WL 8814635, at *10; *Merrell*, 2022 WL 3970078, at *10; *Multi-Cnty. Water Supply Corp.*, 321 S.W.3d at 909.

Thus, the only claim against CISD over which the trial court had subject matter jurisdiction was the breach of contract claim. But the trial court justifiably dismissed this claim on mootness grounds. Executor originally pleaded facts that created standing because she alleged she had suffered a concrete and particularized injury-in-

fact that was fairly traceable to the defendant's conduct and that a favorable decision would have been likely to redress her injury. This was rendered moot when the death benefit beneficiary designation that identified the niece and nephew as beneficiaries was produced and when the death-benefit funds were paid to them without objection. At that point there was no longer a controversy between Executor and CISD. Therefore, dismissal was the appropriate remedy. *See City of El Paso*, 491 S.W.3d at 904–05. We therefore overrule Executor's issues and affirm the trial court's dismissal of CISD. *See Thames Shipyard & Repair Co. v. Galveston Cent. Appraisal Dist.*, No. 14-11-00691-CV, 2011 WL 5042836, at *5 (Tex. App.—Houston [14th Dist.] Oct. 25, 2011, no pet.) (per curiam) (mem. op.).

### b. Omni

Omni did not raise governmental immunity at trial or on appeal. However, governmental immunity may extend to private entities that contract with governmental entities. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 124 (Tex. 2015) (quoting *K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994), which held (that a private company that "'operate[d] solely upon the direction of [the system]' and 'exercise[d] no discretion in its activities' was indistinguishable from the system, such that 'a lawsuit against one [wa]s a lawsuit against the other'"). If governmental immunity applies to a claim against a private contractor, the trial court lacks subject matter jurisdiction over the matter. *Bellamy v. Allegiance Benefit Plan Mgmt, Inc.*, 696 S.W.3d 751, 763–64, 768 (Tex. App.—Eastland 2024, no pet.). Therefore, like

24

governmental immunity for governmental entities, governmental immunity for contractors may be raised for the first time on appeal, even sua sponte.

In this case, Executor affirmatively pleaded that Omni was the third-party administrator for the Plan. The Plan demonstrated that CISD, not Omni, had the ultimate decision-making control for Plan benefit decisions. As noted by the court in *Bellamy*, "Texas courts have uniformly held that a private company acting in the role as a third-party administrator to an insurance program that is funded by the State or another governmental entity is, like the governmental entity for which it contracts, immune from liability and suit." 696 S.W.3d at 763.[5] Therefore, we hold that CISD's governmental immunity extends to Omni.

---

[5] *Bellamy* acknowledged that, in the context of its case, Allegiance's relationship with the City entitled Allegiance to rely on governmental immunity. *Bellamy*, 696 S.W.3d at 763–64 (first citing *Foster v. Tchr. Ret. Sys.*, 273 S.W.3d 883, 885–90 (Tex. App.—Austin 2008, no pet.) (extending immunity to third-party administrator Aetna Health Management, LLC); and then citing *Stegall v. TML Multistate Intergovernmental Emp. Benefits Pool, Inc.*, No. 05-18-00239-CV, 2019 WL 4855226, at *5 (Tex. App.—Dallas Oct. 2, 2019, no pet.) (mem. op.) (extending immunity to the administrator for the TML Multistate Intergovernmental Employee Benefits Pool, Inc.'s intergovernmental self-insurance risk pool); *United Healthcare Choice Plus Plan for City of Austin Emps. v. Lesniak*, No. 03-15-00309-CV, 2015 WL 7951630, at *2–3 (Tex. App.—Austin Dec. 1, 2015, pet. denied) (mem. op.) (extending immunity to administrator of the City's self-funded health plan); and *Humana Ins. Co. v. Mueller*, No. 04-14-00752-CV, 2015 WL 1938657, at *2, *5 (Tex. App.—San Antonio Apr. 29, 2015, pet. denied) (mem. op.) (extending immunity to insurer that served as the "Plan Manager" of the City of San Antonio Housing Authority's self-funded health care plan); and finally citing *McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc.*, No. 7:14-CV-913, 2015 WL 9257154, at *8 (S.D. Tex. Dec. 14, 2015) (extending immunity to the third-party administrator of the Employees Retirement System of Texas's (ERS) health insurance plan because final decisions on benefit payments rested with ERS)). *Bellamy* noted that "in [such]

Does CISD's waiver of immunity under the Local Government Code for breach of contract actions apply to Omni, too? Waiver of governmental immunity exists only if the legislature has clearly and unambiguously waived the immunity by statute. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023); *Bellamy*, 696 S.W.3d at 760. No such waiver has been granted by the legislature for claims against third-party administrators like Omni in this case. Under this scenario, the trial court had no subject matter jurisdiction over the breach of contract claim and the remainder of the claims against Omni would be barred by governmental immunity for the same reasons they were barred against CISD.

The ultimate result is the same if Omni's immunity for breach of contract was waived under Local Government Code Section 271.152. As with the breach of contract claim against CISD, once the benefit designation form was produced and the niece and nephew were paid their rightful benefits, there ceased to be a controversy between Executor and Omni, and the claim became moot. Therefore, dismissal was appropriate.

---

circumstances . . . , courts have held that the governmental unit's immunity protections extend to and may be asserted by the third-party administrator that is retained to supervise the unit's self-funded insurance plan" because "a third-party administrator's entitlement to immunity is 'derived' from the governmental unit's assertion of immunity." *Bellamy*, 696 S.W.3d at 764.

### c. Remand

Should Executor's claims be remanded to give Executor a chance to amend her pleadings? No. Executor has sued entities that have governmental immunity from suit based on the pleaded facts. In those claims where immunity is waived by the pleaded facts, they were rendered moot by the uncontroverted identification of the rightful beneficiaries and payment of benefits to them. The lack of subject matter jurisdiction in this case does not arise from a lack of factual allegations but from the nature of the allegations and the undisputed facts. Therefore, remand is not appropriate. *See Clint*, 487 S.W.3d at 559; *Johnson v. Williams*, No. 02-19-00089-CV, 2019 WL 6334689, at *5 (Tex. App.—Fort Worth Nov. 27, 2019, pet. denied) (mem. op.); *Dunson v. Jacobson*, No. 02-18-00059-CV, 2019 WL 4122606, at *7 (Tex. App.—Fort Worth Aug. 29, 2019, no pet.) (mem. op.).

## V. Conclusion

We overrule Executor's issues and affirm the judgment of the trial court.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: March 20, 2025

27